## DOTY ET AL. v. SANDUSKY PORTLAND CEMENT COMPANY.

[No. 6,723.   Filed April 22, 1910.   Rehearing denied June 22, 1910. Transfer denied November 17, 1910.]

1. CONTRACTS.—*Vendor and Purchaser.—Repurchase.—Merger.*— A contract by which vendors agree to convey to a purchaser certain land at a certain price, on condition that a factory be built thereon, or, on failure thereof, that it be retransferred to the vendors upon payment of one-half of such price, is not merged into a deed executed in pursuance thereof, but gives to the vendors the right to require a reconveyance, on failure to erect such factory.   p. 443.

2. CONTRACTS.—*Deeds.—Merger.*—Where a contract contains collateral and independent covenants, in addition to one for executing a deed, the contract does not merge in the deed executed in accordance therewith.   p. 443.

3. REFORMATION.—*Contracts.—Description of Land.—Mistake.*— Where the description of land in a contract providing, among other things, for the sale of land, is defective, the vendors, on a repurchase thereof, as provided in the contract, are entitled to a reformation of such description.   p. 444.

4. LACHES.— *Contracts.— Repurchase of Land.*— The failure of vendors to exercise an option, within nine years, to repurchase certain land sold for factory purposes, but which condition had failed, is not barred by laches, where the vendors retained possession during such period, the extension being to the advantage of the purchaser.   p. 444.

From Kosciusko Circuit Court; *Lemuel W. Royse,* Judge Pro Tem.

Suit by Alonzo U. Doty and another against the Sandusky Portland Cement Company.   From a judgment for defendant, plaintiffs appeal.   *Reversed.*

*S. J. North, Frank U. Wagner* and *J. M. Van Fleet,* for appellants.

*Miller, Drake & Hubbell* and *Frazer, Cook & Frazer,* for appellee.

ROBY, J.—Suit by appellants.   The court sustained a demurrer to the complaint.   Appellants refused to plead further, and appeal to this court.

The question arises on a written contract, which is as follows:

"This agreement made this February 14, 1898, by and between Minnie Gawthrop and John Gawthrop, her husband, of Van Buren township, Kosciusko county, Indiana, and Vanton O. Foulk, trustee, of Cleveland, Ohio, witnesseth, that said Minnie Gawthrop and John Gawthrop, their heirs, executors and administrators and assigns, for and in consideration of the sum of $65 per acre for each and every acre of the tract or parcel of land hereinafter described, or so much thereof as said Vanton O. Foulk, trustee, his heirs or assigns shall elect to purchase under the terms of this agreement, to be paid as hereinafter set forth, shall on or before August 15, 1898, at the option of said Vanton O. Foulk, trustee, his heirs or assigns, all or any part thereof, as said Vanton O. Foulk, trustee, his heirs or assigns shall elect, of that tract or parcel of land situated in Kosciusko county, Indiana, and described as follows, to wit:  *  *  *  That said conveyance shall contain the usual covenants that said premises, at the time of such conveyance, are free and clear of all demands and encumbrances whatsoever, and all other usual and reasonable covenants; that said Vanton O. Foulk, trustee, his heirs or assigns, in consideration thereof, shall well and truly pay or cause to be paid to said Minnie Gawthrop and John Gawthrop, their heirs, executors, or administrators, the aforesaid sum of $——————— at the time of the execution and delivery of this conveyance; that in case said Vanton O. Foulk, trustee, his heirs or assigns, shall not well and truly pay, or cause to be paid, to said Minnie Gawthrop and John Gawthrop, their heirs, executors, or administrators, the aforesaid sum on or before August 15, 1898, then and in that case this agreement shall be null and void as to both parties hereto, and neither of said parties shall in any manner whatsoever be bound thereby; that said Vanton O. Foulk, trustee, his heirs or assigns, shall erect, or cause to be erected, at or near the town of Milford Junction, Indiana, in Van Buren township, a factory for the manufacture of Portland cement, the capacity of which shall not be less than 50,000 barrels of finished product annually, said factory to be completed and in operation within a period

of eighteen months from the date of the execution and delivery of the conveyance herein provided for; that in case said factory shall not be completed as herein set forth, said Vanton O. Foulk, trustee, his heirs or assigns shall reconvey the tract or parcel of land hereinbefore described to said Minnie Gawthrop and John Gawthrop, their heirs or assigns, and upon execution and delivery of such conveyance the said Minnie Gawthrop and John Gawthrop, their heirs or assigns, shall pay, or cause to be paid, to said Vanton O. Foulk, trustee, his heirs or assigns, a sum in lawful money equal to one-half the purchase price of the tract or parcel of land as hereinbefore described, paid by said Vanton O. Foulk, trustee, his heirs or assigns, under the terms of this agreement; that said Minnie Gawthrop and John Gawthrop shall have the right to use for pasturage or other farming purposes such part or parts of the tract of land herein described as may not be in use or be required by said Vanton O. Foulk, trustee, his heirs or assigns, in the process or for the purpose of the manufacture of Portland cement; that said John Gawthrop shall have the right to take off all growing crops and to remove all division fences located on the tract of land herein described; that said Minnie Gawthrop and John Gawthrop shall have the right to build temporary fences for the purpose of retaining his stock in pasture on the within described parcel of land, provided such construction of fences does not in any manner interfere with the taking of the marl from such land or with the manufacture of Portland cement.

Minnie Gawthrop,<br>
John Gawthrop,<br>
Vanton O. Foulk, trustee.''

It is shown by proper averments that appellants have succeeded to the rights of the Gawthrops, and appellee has succeeded to those of Foulk; that the Gawthrops remained in actual and open possession of the premises until the time of their conveyance to appellants, who have since had full possession thereof; that the conveyance by the Gawthrops was made in pursuance of said contract; that the undertaking on the part of Foulk, to erect a factory for the manufacturing of cement, has not been performed; that nothing

whatever has been done in that behalf; that appellee does not intend to erect any factory; that appellants on June 17, 1907, served written notice on appellee of their intention to exercise the right of repurchase, provided for in said contract, and of their readiness to pay the sum of $1,445.68— which sum is the one-half of the price originally paid for said land—upon the execution of a conveyance therefor; that appellee refuses to make such conveyance. Appellants offer to pay said sum to appellee or into court for its benefit, as the court may order. The prayer is that a commissioner be appointed to make conveyance.

We are informed that the court sustained a demurrer to this pleading, upon the settled proposition that the terms of a preliminary contract for the sale of real estate

1. are merged in the deed subsequently made. *Lucas v. Hendrix* (1883), · 92 Ind. 54. There are many cases in which this rule has been stated, and the question is not as to the rule but as to its application. We are of the opinion that it does not apply. The contract heretofore set out is very much more than a preliminary contract for the sale of real estate. The execution of the deed

2. does not operate as a merger, where the covenants of the contract are collateral and independent, and do not have to do with the title, possession, quality or emblements of the land conveyed. *Carr v. Roach* (1853), 2 Duer 20. That provision which it is now sought to enforce stands on the same footing as if a separate contract for repurchase had been made between the parties. ''The paper is an independent contract which embraces as one of its provisions the making and delivery of a deed for the land and of course was not merged in the deed subsequently made.'' *Kemp v. Pennsylvania Railroad* (1893), 156 Pa. St. 430, 26 Atl. 1074. See, also, *Ludeke v. Sutherland* (1877), 87 Ill. 481, 29 Am. Rep. 66; *McGowan v. Bailey* (1892), 146 Pa. St. 572, 23 Atl. 387; *Close v. Zell* (1891), 141 Pa. St. 390, 21 Atl. 770, 23 Am. St. 296.

The exception to the general doctrine first stated has been often declared. *Durkin* v. *Cobleigh* (1892), 156 Mass. 108, 30 N. E. 474, 17 L. R. A. 270, 32 Am. St. 436; *Saville* v. *Chalmers* (1888), 76 Iowa 325, 41 N. W. 30; *Trayer* v. *Reeder* (1876), 45 Iowa 272; *Bogart* v. *Burkhalter* (1845), 1 Denio 125.

This leads to a reversal of the judgment. The averments further show a mistake in description in the contract, 3. of which reformation is sought. The averments, if established, will entitle the parties to that relief. We do not regard a delay of nine years as, under the circumstances, any evidence of laches. Appellants were in 4. possession, and the delay was distinctly to the advantage of appellee, it thereby being given ample time in which to construct the specified factory. The main purpose of this contract seems to have been to procure the erection of such factory. The advantage thereby accruing to landowners and the public generally is well known. The conveyance of the land selected from the described tract was a mere incident, and appellee ought not to be released from its undertaking, because title to the land necessary to its enterprise was vested in it, and much less because of the giving of ample time to it in which to do that for which it was obligated.

Judgment reversed and cause remanded, with instructions to overrule demurrer.