Lola ROKUSEK, Appellee,

v.

Dean A. JENSEN and Lori J. Jensen, Appellants.

No. 94–2025.

Supreme Court of Iowa.

May 22, 1996.

Brian W. Peters, Dubuque, for appellants.

Jennifer A. Clemens of Reynolds & Kenline, Dubuque, for appellees.

Considered by McGIVERIN, C.J., and CARTER, LAVORATO, NEUMAN, and ANDREASEN, JJ.

NEUMAN, Justice.

When eighty-four-year-old Lola Rokusek sold her duplexed home to defendants Dean and Lori Jensen, the purchase agreement incorporated by reference a standard residential lease permitting Lola to reside in one of the apartments. The lease took effect in November 1990 and extends to November 2020, subject to earlier termination upon Lola's death. During its duration, the monthly rental is fixed at $275.

This appeal concerns the Jensens' attempt to evict Lola from the premises for alleged maintenance violations, and their subsequent effort to increase the rent to $375 per month. When Lola refused to pay the higher sum, Jensens served her with notice to quit. Lola secured a temporary—and then a permanent—injunction restraining Jensens from evicting her or raising the rent. This appeal by Jensens followed.

Jensens claim that (1) the district court erred in determining that Iowa Code chapter 562A (1993), the Uniform Residential Landlord and Tenant Act (URLTA), does not govern the contract between the parties, (2) the injunction was granted contrary to law, and (3) the injunction is unduly broad. Although we believe the URLTA applies procedurally to the lease agreement between the parties, we also believe Lola has adequate remedies at law and, thus, dissolve the injunction.

■ An action for injunction, tried in equity, is reviewable on appeal de novo. *Incorporated City of Denison v. Clabaugh,* 306 N.W.2d 748, 751 (Iowa 1981). Further facts will be detailed as they pertain to the arguments advanced by the parties.

■ I. The fundamental question is whether the URLTA governs the parties' relationship as landlords and tenant. The district court determined the statute had no application because the dwelling unit agreement was not separately signed but, rather, formed part of the larger contract between the parties for sale of the premises. Nevertheless the court looked to the terms of the agreement (a standard residential lease form issued by the state bar association) to measure Lola's compliance with her obligations as a tenant to maintain the premises in accordance with health and safety codes.

Unlike the district court, we do not find the parties' failure to separately sign the lease controlling on the question of whether the URLTA applies. The parties' executed purchase agreement specifically recited "[s]eller and buyer agree to the terms of the attached lease." The lease constitutes an agreement collateral to, and enforceable separately from, Lola's conveyance of fee simple title to the Jensens. *Phelan v. Peeters,* 260 Iowa 1359, 1362, 152 N.W.2d 601, 603 (1967).

Nothing in the language of the lease, or the purchase agreement which incorporated it, exempts the agreement from the application of chapter 562A. Clearly the agreement "embod[ies] the terms and conditions concerning the use and occupancy of a dwelling unit and premises." Iowa Code § 562A.6(10) (defining "[r]ental agreement"). Likewise, the statutory definition of "landlord" and "tenant" fit the status assumed by the parties following sale of the premises. *See id.* §§ 562A.6(5) ("landlord" means owner or lessor of dwelling unit), 562A.6(14) (defining "tenant" as person entitled under a rental agreement to occupy a dwelling unit to the exclusion of others).

■ In support of the court's ruling, Lola suggests the parties' transaction comes within the "occupancy under a contract of sale" exclusion found in section 562A.5(2). By its terms, however, the exclusion applies solely to a vendor and vendee under an *installment* contract for the sale of real estate. The exclusion simply does not apply to the outright conveyance by deed involved here.

Finding no basis to exempt this lease from the coverage of chapter 562A, we turn to appellants' claim that Lola's remedies at law render the injunction unnecessary or excessively broad in scope.

II. Four years after Lola began her residency on the premises as a tenant, the Jensens served her with a notice of noncompliance pursuant to Iowa Code section 562A.27(1).[1] The notice identified seven conditions constituting alleged breach of the rental agreement that required immediate attention: replacement of the gas stove or capping of the gas line; removal of excess flammable or combustible material from the apartment; general removal of clutter; the sealing of open containers of food in the basement; cleaning the storage area of all rodent droppings; removal of flammable materials from the storage area; and rearrangement of stored items in the basement so as to allow clear access to ceiling space and the electrical service panel. The notice advised that the lease would terminate within thirty days of receipt if the breach was not remedied within fourteen days. *See* Iowa Code § 562A.27(1).

The record reveals that the accumulation of "clutter" in the apartment and adjoining storage area stemmed from Lola's longstanding practice of serving as the collection point for a church mission's clothing drive. Once she received the notice of breach, however, neighbors went to work helping her clean both the apartment and the basement. Shelves were installed to better organize stored items, excess cardboard boxes were discarded, and floors were swept. The only food remaining uncovered was a small quantity of potatoes suspended from a clothes line in an open bucket. The power company inspected the stove and gas line, finding no hazard in their continued use.

Jensens nevertheless notified Lola by letter that the first four items on the notice had not been adequately remedied. Failure to remedy the breach, the letter advised, caused the lease to terminate on April 9, 1994. The letter went on to state, however, that Lola could continue to rent the apartment at an increased rate of $395 per month.

Lola paid only her customary rent of $275 for the month of April. The Jensens considered this only a partial payment under the "new" lease terms and gave Lola three days to make full payment or face eviction. *See* Iowa Code § 562A.27(2).

Lola responded by filing a petition for rescission of the purchase agreement and a temporary injunction restraining the Jensens from evicting her until a hearing could be had on the rescission. The court granted a temporary injunction to maintain the status quo pending hearing. Lola then amended her petition to include a request for a permanent injunction prohibiting the Jensens from terminating her lease. Ultimately she dismissed her action for rescission, and proceeded solely upon her request for a permanent injunction.

Following hearing, the court concluded that Lola had complied with all the health and safety provisions of the lease agreement within fourteen days of the notice of breach. The court went on to find, however, that Lola's remedies at law were inadequate to protect her rights under the lease. It therefore issued a broadly worded permanent injunction, restraining the Jensens from evicting her from the premises and from raising the rent.

■ On appeal, Jensens do not contest the court's findings relative to Lola's compliance with the lease. Instead they challenge the court's authority to enjoin them from enforc-

---

1. The statute provides:

[I]f there is a material noncompliance by the tenant with the rental agreement ... materially affecting health and safety, the landlord may deliver a written notice to the tenant specifying the acts and omissions constituting the breach and that the rental agreement will terminate upon a date not less than thirty days after receipt of the notice if the breach is not remed-

ied in fourteen days, and the rental agreement shall terminate as provided in the notice subject to the provisions of this section. If the breach is remediable by repairs or the payment of damages or otherwise and the tenant adequately remedies the breach prior to the date specified in the notice, the rental agreement shall not terminate....

Iowa Code § 562A.27(1).

ing the lease's provisions in the future. We believe their position is well taken.

It is well-settled that

the equitable power to enjoin is not a routine remedy and is designed primarily to avoid irreparable damage and to afford relief when there is no adequate remedy at law. Thus, injunctive relief is an extraordinary remedy, to be granted with caution and only when clearly required.

*Clabaugh*, 306 N.W.2d at 755 (citations omitted). It appears uncontested that Lola would suffer irreparable damage if evicted. The question is whether adequate remedies, short of injunction, exist for her protection.

Lola has at least two legal remedies available to her. First, no action by Jensens to recover or repossess the dwelling unit could be commenced except in accordance with the notice provisions of chapter 562A, followed by Lola's right to hearing under the forcible entry and detainer provisions of Iowa Code section 648.5. Although summary in nature, such proceedings afford tenants a forum to tender the defenses asserted by Lola here. Second, Lola could have sought to establish her rights under the parties' agreement pursuant to an action for declaratory judgment. *See* Iowa R.Civ.P. 261–63. In other words, she need not have waited to assert her available defenses but could have moved proactively. *See Ewurs v. Irving*, 344 N.W.2d 273, 276 (Iowa App.1983).

Here the injunction issued by the district court went beyond declaring or protecting the rights of the parties under the lease; it effectively created a *new* lease, preventing the Jensens from evicting Lola for *any* reason. By so absolving Lola from all obligations under the parties' contract, the court exceeded its equitable authority to protect her interest. The permanent injunction issued by the court must be, and is hereby, dissolved.

**INJUNCTION DISSOLVED.**